## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MINNESOTA

| | | |
|---|---|---|
| MARCQUISE MURPHY and RATANYA ROGERS, Individually and on behalf of all others similarly situated, | ) ) ) ) | |
| | ) | |
| *Plaintiffs*, | ) | COLLECTIVE AND CLASS ACTION |
| | ) | |
| v. | ) | CASE NO. _19-cv-01929_____ |
| | ) | |
| LABOR SOURCE, LLC d/b/a/ CATSTAFF d/b/a ONE SOURCE STAFFING AND LABOR, and BLUSKY RESTORATION CONTRACTORS, LLC, | ) ) ) ) ) | JURY TRIAL DEMANDED |
| | ) ) | |
| *Defendants*. | ) | |

## CLASS AND COLLECTIVE ACTION COMPLAINT

Plaintiffs Marcquise Murphy and Ratanya Rogers, individually and on behalf of all others similarly situated (collectively, "Plaintiffs"), by their attorneys Schneider Wallace Cottrell Konecky Wotkyns LLP and Berger & Montague P.C., bring the following action for violation of the Fair Labor Standards Act, the Minnesota Fair Labor Standards Act, and other state law claims. Plaintiffs state the following against Defendants:

## I.    INTRODUCTION

1.    Plaintiffs bring this collective and class action on behalf of themselves and other similarly situated individuals who have worked for Labor Source, LLC d/b/a/ Catstaff d/b/a One Source Staffing and Labor ("One Source"), and BluSky Restoration Contractors, LLC ("BluSky") (together, "Defendants") as non-exempt Manual Laborers. Plaintiffs and

the putative Class and Collective Members challenge Defendants' minimum wage and overtime violations of the Fair Labor Standards Act, 29 U.S.C. §§ 201, *et seq.* ("FLSA"), as well as the wage, hour, labor, and other applicable laws of the States of Minnesota, including the Minnesota Fair Labor Standards Act, Minn. Stat. § 177.21 *et seq.* ("MFLSA") and the Minnesota Payment of Wages Act, Minn. Stat. § 181.01 *et seq.* ("MPWA").

2.      As manual laborers, Plaintiffs and the putative Class and Collective Members were and are[1] non-exempt employees under federal and state wage and hour laws, and should receive minimum wage and overtime pay consistent with the requirements of those laws. However, Defendants do not pay their manual laborers minimum wage and overtime as required by law. Instead, Defendants fraudulently misrepresent the actual number of hours worked by their manual laborers and make improper deductions from wages, thereby robbing said employees of pay at the applicable minimum wage and at time-and-a-half for overtime hours worked. These employees perform substantially the same job duties and responsibilities, and are compensated pursuant to the same company policies. They are similarly situated under Federal Rule of Civil Procedure 23 and the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 216(b).

3.      Plaintiffs sue on behalf of themselves and other similarly situated laborers who have worked and are currently working for Defendants, and who elect to opt into this action pursuant to the collective action provision of the FLSA. This action claims that

---

[1] Upon information and belief, Defendants' illegal policies and practices as alleged herein continue to be followed and are ongoing despite Plaintiffs' use of the past tense regarding their employment with Defendants. Therefore, Plaintiffs use the present tense throughout the Complaint where applicable.

Defendants have violated and continue to violate the wage-and-hour provisions of the FLSA by depriving Plaintiffs, as well as those similarly situated to Plaintiff, of their lawful minimum wage and overtime wages.

4.      The national FLSA Collective ("Collective"), represented by Plaintiffs Murphy and Rogers, is comprised of all people who are or have been employed by Defendants as manual laborers and whose hours were misrepresented by Defendants, within the United States within three years prior to this action's filing date through the final disposition of this action (the "Class Period").

5.      Plaintiffs and all similarly situated employees who elect to participate in this action seek unpaid compensation, an equal amount in liquidated damages and/or prejudgment interest, attorneys' fees, and costs pursuant to 29 U.S.C. § 216(b).

6.      Plaintiffs also bring this action under the Minnesota wage and hour statutes. The Minnesota Class, represented by Plaintiffs Murphy and Rogers, is comprised of all people who are or have been employed by Defendants and who were subjected to the fraudulent time reduction scheme described herein within the State of Minnesota within the Class Period. Plaintiffs intend to seek class certification under Rule 23 of the Federal Rules of Civil Procedure for the Minnesota Class.

7.      Plaintiffs and the Minnesota Class Members seek unpaid wages and restitution pursuant to Minnesota minimum wage and overtime laws, as well as liquidated damages, statutory penalties, reimbursement of unlawful deductions, prejudgment interest, attorneys' fees, and costs as allowed by Minnesota state law.

8.      Accordingly, the above-named Plaintiffs bring this action on behalf of

themselves and on behalf of a class of similarly situated persons who have worked as manual laborers for Defendants in Minnesota ("the Class Members") for statutory violations that stem from these wage violations.

## II.    JURISDICTION AND VENUE

9.    This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1331 because the action involves a federal statute, the FLSA, 29 U.S.C. §§ 201, *et seq.*

10.    This Court has supplemental jurisdiction over Plaintiffs' Minnesota state law claims pursuant to 28 U.S.C. § 1367 because these claims derive from a common nucleus of operative fact.

11.    Venue in the District of Minnesota is proper pursuant to 28 U.S.C. § 1391(b) because a substantial part of the unlawful conduct described herein occurred on work sites within Minnesota.

12.    Defendants are subject to personal jurisdiction in this District because Defendants are foreign corporations that conduct substantial and continuous commercial activities in Minnesota. Defendants operated work sites within Minnesota on which Plaintiffs, Collective Members, and Class Members provided their labor. Defendants contract with residents and businesses within Minnesota for the services provided by their manual labor workforce.

13.    This Court is empowered to issue a declaratory judgment and further relief pursuant to 28 U.S.C. § 2202.

### III.    **THE PARTIES**

14.    Plaintiff Marcquise Murphy is a resident of Chicago, Illinois. From approximately August 2017 to October 2017, Plaintiff Murphy worked for Defendants as a manual laborer and non-commercial driver in the States of Minnesota and Illinois.

15.    Plaintiff Ratanya Rogers is a resident of Chicago, Illinois. From approximately August 2017 to November 2017, Plaintiff Rogers worked for Defendants as a manual laborer in the State of Minnesota.

16.    The Collective Members are all people who are or have been employed by Defendants as manual laborers in the United States within the Class Period (three years prior to the filing of this Complaint until final disposition).

17.    The Minnesota Class Members are all non-exempt employees who are or have been employed by Defendants in the State of Minnesota within the Class Period.

18.    Defendant Labor Source, LLC d/b/a Catstaff d/b/a One Source Staffing and Labor is a foreign corporation with locations in various states throughout the country, with its principal office located in Olathe, Kansas. One Source is a staffing agency and hires workers who perform work in various states in the Country, including Minnesota and Illinois. One Source may be served with process through its Registered Agent, Spenserv, Inc., located at 9401 Indian Creek Parkway Building 40, Suite 700, Overland Park, Kansas 66210.

19.    Defendant BluSky Restoration Contractors, LLC is a foreign corporation doing business in Minnesota, with its principal place of business in Centennial, Colorado. Process may be served in its registered agent, Chelsey Martine, 2345 Rice Street, Suite

230, Roseville, Minnesota 55113

20.     At all material times, Defendants were and are legally responsible for all the unlawful conduct, policies, acts, and omissions as described and set forth in this Complaint, as the joint employers of Plaintiffs, the Collective, and the Class Members.

21.     At all material times, Defendants have been and are governed by and subject to the FLSA, 29 U.S.C. § 201, *et seq*.

22.     At all material times, Defendants have been and are employers within the meaning of section 3(d) of the FLSA. 29 U.S.C. § 203(d).

23.     At all material times, Defendants have been and are enterprises within the meaning of section 3(r). 29 U.S.C. § 203(r).

24.     At all material times, Defendants have been and are enterprises or enterprises in commerce or in the production of goods for commerce within the meaning of section 3(s)(1) of the FLSA because Defendants have had and continue to have employees engaged in commerce. 29 U.S.C. § 203(s)(1).

25.     At all material times, the unlawful conduct against Plaintiffs, the Collective, and Class Members as described in this Complaint was actuated, in whole or in part, by a purpose to serve Defendants. At all relevant times, upon information and belief, the unlawful conduct described in this Complaint was reasonably foreseeable by Defendants and committed under actual or apparent authority granted by Defendants such that all aforementioned unlawful conduct is legally attributable to Defendants.

26.     At all material times, Defendants have had an annual gross business volume of not less than $500,000. Likewise, pursuant to Minn. Stat. § 177.24, Subd. 1(1),

Defendants are "large employers" because they are an enterprise whose annual gross volume of sales made or business done is not less than $500,000 and are covered by the Minnesota Fair Labor Standards Act, sections 177.21 to 177.35.

27.     At all material times, Defendant BluSky and One Source were and are joint employers under the FLSA.

## IV.    STATEMENT OF FACTS

28.     Defendant One Source is a staffing company that recruits and assigns workers to other companies. One Source operates in various states across the U.S., including Minnesota, Kansas, Illinois, Texas, Colorado, and New York.

29.     Defendant BluSky is in the business of providing manual labor services for restoration and environmental services. BluSky contracted with One Source to provide manual laborers to BluSky for restoration projects in various work sites, including in Minnesota.

30.     Plaintiffs and the Class and Collective Members perform manual labor services for Defendants, at various work sites for restoration projects.

31.     Each of Defendants' worksites are overseen by a lead boss (the "lead"), who unilaterally keeps track of the hours worked by Plaintiffs and the Class and Collective Members and has Plaintiffs and the Class and Collective Members sign a time sheet at the end of their shift.

32.     Defendants, however, fabricate, manipulate and fraudulently reduce the hours recorded worked by Plaintiffs and the Class and Collective Members, resulting in vast underpayment of wages and unreported hours worked. Plaintiff Murphy witnessed

BluSky leads fabricate time sheets altogether. In addition, there were times when Plaintiffs and the Class and Collective Members received paychecks even though BluSky had not submitted their time sheets to One Source at all. Compensation provided to Plaintiffs and the Class and Collective Members is not paid finally, unconditionally, free and clear of deductions and/or kickbacks. Defendants require Plaintiffs and Class and Collective Members to incur numerous work-related expenses and/or improperly deducts amounts from their wages.

33.    Defendants require Plaintiffs and the Class and Collective Members to incur certain expenses which would normally be borne by an employer, such as expenses for toll costs, gas, equipment, food, hotel, and other travel expenses for the benefit of Defendants' businesses. Additionally, Defendants require workers to obtain steel-toed shoes in order to perform their work, yet do not reimburse Plaintiffs and the Class and Collective Members for that required expense. These expenses are incurred solely for the benefit of Defendants' income and pecuniary interest. Defendants do not reimburse Plaintiffs and the Class Members for the travel, equipment, lodging, or other business expenses.

34.    Defendants also make improper deductions from Plaintiffs' and Class and Collective Members' wages, including deductions for travel and lodging expenses. Upon information and belief, Defendants deduct approximately $7 to $20 per week per workers from the workers' pay for "travel," and up to $130 per week for lodging. Defendants require Plaintiffs and Class and Collective Members to stay in a nearby hotel adjacent to the work site. Defendants required Plaintiffs and Class Members to group together in hotel rooms, often 5 to 8 people per room. Defendants deduct between $120 and $130 per week

from each manual laborer who is required to stay in the hotel, regardless of the actual room rate charged by the hotel or the number of workers assigned per room. In other words, Defendants attempt to profit from Plaintiffs and Class and Collective Members for their lodging expenses by making oversized and improper deductions from the workers' wages.

35.    Plaintiff Murphy drove vans of Defendants' workers from the Chicago area to a work site in the St. Paul, Minnesota area. Plaintiffs and Class and Collective Members are not compensated for this drive time, which last at least six hours each way. Defendants also refuse to reimburse Plaintiffs and Class Members for expenses incurred in driving the van, including gas costs, food costs, and toll roads.

36.    In addition, Defendants do not compensate Plaintiffs and the Class and Collective Members for time spent before and after their shifts donning and doffing the personal protective equipment, including but not limited to HVAC suits and masks, which BluSky requires them to wear. The protective gear includes a full hazardous materials suit and a frontal respirator. On average, it takes between 15 to 20 minutes to put on the protective gear and another 15 to 20 minutes to remove the protective gear every shift.

37.    Defendants do not compensate Plaintiffs and Class and Collective Members for meetings held after the end of their shifts. These meetings are mandatory for Plaintiffs and all workers and, on average, last an extra 30 minutes. Meetings are held approximately one to two times per week.

38.    Defendants require Plaintiffs and Class and Collective Members to show up at a centralized meeting place at 6:00 a.m. each day, usually a warehouse, where the workers are required to wait to be directed to their respective worksite. On average, this

waiting time lasts from 30 minutes to an hour each day worked. Defendants do not compensate Plaintiffs and Class and Collective members for "waiting time," during which workers are required to be on site but are waiting for others to arrive to the work site or waiting for approval from higher-ups to begin working.

39.     Plaintiffs and the Class and Collective Members worked and continue to work hours for Defendants that are not recorded or for which Plaintiffs and Class and Collective Members are not compensated, despite Defendants having knowledge that such hours are worked. Accordingly, Plaintiffs and the Class and Collective Members are underpaid for the hours actually worked, often resulting in hourly rates that fall well below the minimum wage rates and overtime rates required by law.

40.     Defendants compensate Plaintiffs and Class and Collective Members by utilizing a debit card system known as "iPay," which deposits funds onto a debit card as payment of wages each week. Plaintiffs and Class and Collective Members were not and are not made aware they would be paid through this iPay system until after their first pay period, where instead of receiving a physical pay check or a direct deposit, they receive the iPay debit cards and are told this is how wages are going to be paid.

41.     Defendants do not consistently provide pay stubs or wage statements, often withholding the wage statements altogether. Upon information and belief, Defendants make Plaintiffs' and Class and Collective Members' wage statements available through an online subscription, which requires Plaintiffs and Class Members to pay a fee to view their wage statements. When pay stubs are actually provided, the wage statements are inaccurate, incomplete, and do not itemize all deductions taken from Plaintiffs' wages.

42.     Due to Defendants' time-reduction and improper expense deduction schemes, Defendants jointly do not pay hourly rates that meet the minimum wage requirement and do not pay a premium rate of time-and-a-half for all hours worked over 40 in a work week to Plaintiffs and the Class and Collective Members.

43.     Plaintiffs were supposed to be paid a rate of $10 to $19 per hour. When assigned to a work site, Plaintiffs consistently worked over 12 hours per day, six-to-seven days per week until the job was completed. When assigned to a work site, Plaintiffs generally worked 75 to 80 hours per week each workweek. Upon information and belief, Class and Collective members worked and continue to work similar amounts of time per week as Plaintiffs, and are paid similar wages.

44.     Defendants further compel Plaintiffs and the Class Members to incur certain expenses which would normally be borne by an employer, such as expenses for equipment, food, hotel, and travel. As discussed above, Defendants automatically and improperly deduct the hotel "expenses" directly from Plaintiffs' and Class and Collective Members' wages. Additionally, Defendants require workers to obtain steel-toed shoes in order to perform the manual labor work, yet do not reimburse the workers for that required expense. These expenses are incurred solely for the benefit of Defendants' income and pecuniary interest. Defendants do not reimburse Plaintiffs and the Class and Collective Members for the travel and other business expenses.

45.     As a result of Defendants' uniform pay practices, Plaintiffs and the Class and Collective Members have not been and are not compensated for all hours worked, and their hourly rates of pay often fall below the minimum wage.

46.     At all times material to this Complaint, the work performed by Plaintiffs and the Class and Collective Members has been jointly managed and supervised by BluSky and One Source. Upon information and belief, Plaintiffs and Class and Collective members are employed directly by Defendant One Source and perform labor work for Defendant BluSky. Defendant BluSky supervisors are present at starting points, such as the warehouses and the other "waiting time" locations, to direct and supervise the work to be done by Plaintiffs and Class and Collective members. Defendant BluSky also provides the protective equipment that Class and Collective members utilize. Defendant One Source's employees fill out time sheets for Plaintiffs and Class and Collective members. Defendant One Source oversees the payroll processing for Plaintiffs and Class and Collective members.

47.     Defendant One Source is the entity that pays wages to Plaintiffs and the Class and Collective Members. However, upon information and belief, One Source does not always provide wage statements to Plaintiffs and Class and Collective Members. Upon asking for copies of all of check stubs, One Source often fails to provide copies of all wage statements to Plaintiffs and Class and Collective Members. Plaintiffs are informed and believe Class Members' requests for check stubs are similarly rebuffed.

48.     Defendants conduct, as set forth herein, was willful and in bad faith, and has caused significant damages to Plaintiffs and the Class Members.

## V.      COLLECTIVE ACTION ALLEGATIONS

49.     Plaintiffs incorporate by reference the allegations set forth above.

50.     Plaintiffs have actual knowledge that the Collective Members have also been

denied minimum wage and overtime pay for all hours worked over forty (40) per work week. Plaintiffs worked with and communicated with other manual laborers, including workers who were later promoted to a "lead" position, with knowledge of the existence of Collective Members' status as Defendants' employees, improper time reduction scheme, minimum wage and overtime violations, as well as the other statutory violations discussed herein.

51.    Other employees similarly situated to Plaintiffs work for Defendants in a similar capacity and are not paid minimum wage and overtime at the rate of one and one-half times their regular rate for all hours worked per work week.

52.    Defendants employ dozens, and potentially hundreds, of such employees who work in Minnesota, Illinois, Kansas, Texas, Florida, and elsewhere during the last three years, who were and are subject to the time reduction and improper wage reduction schemes described above.

53.    As such, the "Collective" of similarly situated Plaintiffs is properly defined as follows:

> **All current and former non-exempt workers employed by Defendants in the United States in the three years prior to filing this Complaint through the present.**

54.    Although Defendants permitted and/or required Collective Members to work upwards of 80 hours per work week, Defendants have denied them compensation for all hours worked and applied inappropriate deductions from wages. As a result, Collective Members' hourly rates of pay often fell below minimum wage, and they did not receive overtime compensation.

55.     Plaintiffs are representative of the Collective Members in that they performed similar job duties as the Collective Members, were subjected to the same company-wide time reduction scheme and wage deductions, and were similarly subjected to wages below the minimum wage requirement on the basis of uniform company policies and practices. Plaintiffs are acting on behalf of the Collective Members' interests as well as Plaintiffs' own interests in bringing this action.

56.     Collective Members perform the same or similar work as Plaintiffs.

57.     Collective Members regularly work or have worked in excess of forty hours during a work week.

58.     Collective Members are paid an hourly rate and are often paid less than the required minimum wage of $7.25 per hour. Collective Members are not paid for all hours worked in a work week and are subject to inappropriate deductions from their wages, resulting in diluted hourly rates and unpaid overtime wages for hours worked in excess of 40 in a work week.

59.     Defendants' policy of fraudulently misrepresenting the hours worked by Collective Members, and therefore diluting their hourly rate below $7.25 per hour and failing to compensate Collective Members for all hours worked in excess of 40 in a work week, in violation of the FLSA, is universal across the defined Collective and forms the basis of the wage violation.

60.     Collective Members were not and are not exempt from receiving minimum wage or overtime pay under the FLSA.

61.     As such, Collective Members were and are similar to Plaintiffs in terms of

job duties, pay structure, dilution of hourly rates, deductions from wages, and/or the denial of overtime.

62.    Defendants' failure to pay minimum wage and overtime compensation at the rate required by the FLSA results from generally applicable policies or practices, and does not depend on the personal circumstances of the Collective Members.

63.    The experiences of Plaintiffs, with respect to their pay, was and is typical of the experiences of the Collective Members.

64.    The specific job titles or precise job responsibilities of each Collective Member does not prevent collective treatment.

65.    Collective Members, irrespective of their particular job requirements, are entitled to minimum wage for all hours worked up to forty in a work week and are entitled to overtime compensation at the rate of time and a half for hours worked in excess of forty during a work week.

66.    Although the exact amount of damages may vary among Collective Members, the damages for the Collective Members can be easily calculated by a simple formula. The claims of Collective Members arise from a common nucleus of facts. Liability is based on a systematic course of wrongful conduct by the Defendants that caused harm to Collective Members.

67.    The similarly situated Collective Members are known to Defendants, are readily identifiable, and can be located through Defendants' records. They should be notified and allowed to opt into this action pursuant to 29 U.S.C. § 216(b) for the purpose of collectively adjudicating their claims for overtime compensation, liquidated damages,

prejudgment interest, and attorneys' fees and costs.

68.     Unless the Court promptly issues such notice, the numerous similarly situated current and former manual laborers nationwide whose hourly rates are diluted, are denied compensation for all hours worked, and are denied overtime in violation of the FLSA will be unable to secure unpaid back wages, which have been unlawfully withheld by the Defendants.

## VI.    MINNESOTA CLASS ALLEGATIONS

69.     Plaintiffs bring this action as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure on behalf of the "Minnesota Class," which is comprised of:

> **All current and former non-exempt workers employed by Defendants in Minnesota at any time starting three years prior to the filing of this Complaint through the present.**

70.     Numerosity. The number of members in the Minnesota Class is believed to exceed forty. This volume makes bringing the claims of each individual member of the class before this Court impracticable. Likewise, joining each individual member of the Minnesota Class as a plaintiff in this action is impracticable. Furthermore, the identity of the members of the Minnesota Class will be determined from Defendants' records, as will the compensation paid to each of them. As such, a class action is a reasonable and practical means of resolving these claims. To require individual actions would prejudice the Minnesota Class and Defendants.

71.     Typicality. Plaintiff's claims are typical of the Minnesota Class because, like the members of the Minnesota Class, Plaintiffs were subject to Defendants' uniform policies and practices and were compensated in the same manner as others in the Minnesota

Class. Defendants artificially reduce the hours worked by Plaintiffs and Minnesota Class Members, thereby diluting their hourly rates to levels below the minimum wage and failing to compensate Plaintiffs and Minnesota Class Members for all hours worked, including overtime compensation for their overtime hours worked. Members of the Minnesota Class work substantially more than forty (40) hours in a week as non-exempt employees but are uniformly denied compensation to which they are owed. Plaintiffs and the Minnesota Class have been and are under-compensated as a result of Defendants' common policies and practices which fail to comply with Minnesota law. As such, Plaintiff's claims are typical of the claims of the Minnesota Class. Plaintiffs and members of the Minnesota Class sustained damages arising out of and caused by Defendants' common course of conduct in violation of law as alleged herein.

72. <u>Adequacy</u>. Plaintiffs are representative parties who will fairly and adequately protect the interests of the Minnesota Class because it is in their interest to effectively prosecute the claims herein alleged in order to obtain the unpaid wages and penalties required under Minnesota law. Plaintiffs have retained attorneys who are competent in both class actions and wage and hour litigation. Plaintiffs do not have any interest which may be contrary to or in conflict with the claims of the Minnesota Class he seeks to represent.

73. <u>Commonality</u>. Common issues of fact and law predominate over any individual questions in this matter. The common issues of fact include, but are not limited to:

      a.  Whether Plaintiffs and the Minnesota Class work more than forty (40) hours in a work week;

b.  Whether Defendants pay Plaintiffs and the Minnesota Class on a an hourly rate basis;

c.  Whether Defendants fail to compensate Plaintiffs and the Minnesota Class for all hours worked;

d.  Whether Defendants fail to pay Plaintiffs and the Minnesota Class at the state-mandated minimum wage of $9.00 per hour during 2015;

e.  Whether Defendants fail to pay Plaintiffs and the Minnesota Class at the state-mandated minimum wage of $9.50 per hour during 2016 and 2017;

f.  Whether Defendants fail to pay Plaintiffs and the Minnesota Class at the state-mandated minimum wage of $9.65 per hour during 2018;

g.  Whether Defendants fail to pay Plaintiffs and the Minnesota Class overtime wages for all hours worked over forty (40) in a work week;

h.  Whether Defendants fail to keep accurate records of employees' hours of work and wages;

i.  Whether Defendants fail to timely pay employees unpaid wages due upon their separation from employment with the Company;

j.  Whether Defendants failed to provide itemized wage statements to Plaintiffs and the Minnesota Class;

k.  Whether Defendants fail to reimburse Plaintiffs and the Minnesota Class for their business expenses;

74.  The common issues of law include, but are not limited to:

a.  Whether Defendants can claim an exemption for Plaintiffs and the

Minnesota Class;

b. Whether Plaintiffs and the Minnesota Class are entitled to liquidated damages;

c. Whether Plaintiffs and the Minnesota Class are entitled to statutory penalties;

d. The proper measure of damages sustained by Plaintiffs and the Minnesota Class; and

e. Whether Defendants' actions were "willful."

75.    Superiority. A class action is superior to other available means for the fair and efficient adjudication of this lawsuit. Even in the event any member of the Minnesota Class could afford to pursue individual litigation against a company the size of Defendants, doing so would unduly burden the court system. Individual litigation would magnify the delay and expense to all parties and flood the court system with duplicative lawsuits. Prosecution of separate actions by individual members of the Minnesota Class would create the risk of inconsistent or varying judicial results and establish incompatible standards of conduct for Defendants.

76.    A class action, by contrast, presents far fewer management difficulties and affords the benefits of uniform adjudication of the claims, financial economy for the parties, and comprehensive supervision by a single court. By concentrating this litigation in one forum, judicial economy and parity among the claims of individual Minnesota Class Members are promoted. Additionally, class treatment in this matter will provide for judicial consistency. Notice of the pendency and any resolution of this action can be provided to

the Minnesota Class by mail, electronic mail text message, print, broadcast, internet and/or multimedia publication. The identity of the members of the Minnesota Class is readily identifiable from Defendants' records.

77.    This type of case is well-suited for class action treatment because: (1) Defendants' practices, policies, and/or procedures were uniform; (2) the burden is on Defendants to prove it properly compensated its employees including any potential exemptions that might apply; and (3) the burden is on Defendants to accurately record hours worked by employees. Ultimately, a class action is a superior form to resolve the Minnesota claims detailed herein because of the common nucleus of operative facts centered on the continued failure of Defendants to pay Plaintiffs and the Minnesota Class per applicable Minnesota laws.

**FIRST CAUSE OF ACTION**
**COUNT I**
**Fair Labor Standards Act (Overtime Violations)**

78.    Plaintiffs incorporate by reference the allegations set forth above.

79.    The FLSA requires that covered employees receive compensation for all hours worked and overtime compensation not less than one and one-half times the regular rate of pay for all hours worked in excess of forty hours in a work week.  29 U.S.C. § 207(a)(1).

80.    At all times material herein, Plaintiffs and the Collective are covered employees entitled to the rights, protections, and benefits provided under the FLSA. 29 U.S.C. §§ 203(e) and 207(a).

81.    Defendants are covered employers required to comply with the FLSA's

mandates.

82.    Defendants violated the FLSA with respect to Plaintiffs and the Collective, by, *inter alia,* failing to compensate Plaintiffs and the Collective for all hours worked and, with respect to such hours, failing to pay the legally mandated overtime premium for such work, as well as failing to provide compensation that is unconditional, free, and clear of deductions and/or kickbacks as described herein. Defendants also violated the FLSA by failing to keep required, accurate records of all hours worked by Plaintiffs and the Collective.  29 U.S.C. § 211(c).

83.    Plaintiffs and the Collective are victims of uniform and company-wide compensation policies. These uniform policies, in violation of the FLSA, are applied to current and former non-exempt, hourly manual laborers, working throughout the United States.

84.    Defendants jointly require Plaintiffs and the Collective Members to perform work before they clock in, i.e., donning their protective work equipment, and perform work after they clock out, including doffing their protective gear and requiring manual laborers to attend meetings for which they were not compensated, require Plaintiffs and the Collective Members to drive their personal vehicles in the course of their work and did not compensate the laborers for the drive time hours. Defendants also jointly require Plaintiffs and the Collective Members to incur uncompensated "waiting time" hours. Defendants also jointly manipulate Plaintiffs and the Collective Members time records to fraudulently misrepresent the actual number of hours worked, depriving Plaintiffs and the Collective Members of compensation for all overtime hours worked.

85.   Defendants jointly have not paid and continue to refuse to pay Plaintiffs and the Collective Members overtime for all hours worked beyond 40 in each work week.

86.   Plaintiffs and the Collective are entitled to damages equal to the mandated pay, including minimum wage, straight time, and overtime premium pay within the three years preceding the filing of the complaint, plus periods of equitable tolling, because Defendants have acted willfully and knew or showed reckless disregard for whether the alleged conduct was prohibited by the FLSA.

87.   Defendants have acted neither in good faith nor with reasonable grounds to believe that their actions and omissions were not a violation of the FLSA, and as a result thereof, Plaintiffs and the Collective are entitled to recover an award of liquidated damages in an amount equal to the amount of unpaid overtime pay and/or prejudgment interest at the applicable rate.  29 U.S.C. § 216(b).

88.   Defendants jointly and willfully violated and continue to jointly and willfully violate the FLSA, by having engaged and continuing to engage in conduct which demonstrates a willful and/or reckless disregard for the provisions of the FLSA. Plaintiffs spoke with managers or officers of Defendants to alert them of the wage violations, and Defendant One Source has been sued for wage violations in previous lawsuits related to their pay practices for manual laborers. Defendants were therefore on notice of their FLSA obligations and did not correct the violative practices.

89.   As a result of the aforesaid violations of the FLSA's provisions, pay, including minimum wage, straight time, and overtime compensation, has been unlawfully withheld by Defendants from Plaintiffs and the Collective. Accordingly, Defendants are

liable for unpaid wages, together with an amount equal as liquidated damages, attorneys' fees, and costs of this action.

90.    Wherefore, Plaintiffs and the Collective request relief as hereinafter provided.

## COUNT II
## Fair Labor Standards Act (Minimum Wage Violations)

91.    Plaintiffs incorporate by reference the allegations set forth above.

92.    Defendants violated the FLSA with respect to Plaintiffs and the Collective, by, *inter alia,* failing to compensate Plaintiffs and the Collective for all hours worked and, with respect to such hours, failing to pay the legally mandated minimum wage for such work, as well as failing to provide compensation that is unconditional, free, and clear of deductions and/or kickbacks as described herein. Defendants have also violated the FLSA by failing to keep required, accurate records of all hours worked by Plaintiffs and the Collective.  29 U.S.C. § 211(c).

93.    Defendants jointly enacted a scheme to dilute Plaintiffs' and the Collective Members' regular hourly rates of pay below the minimum wage by improperly deducting "expenses" from the workers' wages, as well as fabricating, underreporting or otherwise artificially reducing the total hours reported worked by Plaintiffs and the Collective Members.

94.    As a result, Defendants improperly dilute Plaintiffs' and the Collective Members' regular hourly rates of pay to levels below the federal minimum wage and have not compensated Plaintiffs and the Collective Members for all hours worked.

95.     Defendants jointly have not paid and continue to refuse to pay Plaintiffs and the Collective Members at the federally-mandated minimum wage for all hours worked during each work week.

96.     Defendants jointly violated the FLSA minimum wage by not properly compensating Plaintiffs and the Class Members for all hours worked in a work week, thereby diluting their regular hourly rate below the minimum wage of $7.25.

97.     Defendants' minimum wage violations were and are willful.

98.     As a result of Defendants' joint violations the FLSA minimum wage, Plaintiffs and the Class Members are entitled to recover unpaid wages dating three (3) years from the date of this filing of this Complaint, plus an additional equal amount in liquidated damages, reasonable attorneys' fees, and costs of this action.

99.     Wherefore, Plaintiffs and the Collective request relief as hereinafter provided.

### SECOND CAUSE OF ACTION
### COUNT I
### Minnesota Fair Labor Standards Act (Minimum Wage Violations)

100.    Plaintiffs incorporates by reference the allegations set forth above.

101.    As detailed above, Defendants failed to, and continue to fail to, compensate Plaintiffs and putative Minnesota Class members with at least the minimum wage for all hours worked.

102.    During the applicable statutory period, the MFLSA, Minn. Stat. § 177.21 *et seq.*, was in full force and effect and required that Plaintiffs and putative Minnesota Class members receive the Minnesota minimum wage for all hours worked. Under Minn. Stat. §

177.24, Subdivision 1, every large employer must pay each employee a minimum wage of $8.00 per hour beginning August 1, 2014, $9.00 per hour beginning August 1, 2015, and $9.50 per hour beginning August 1, 2016. Minnesota's minimum-wage rate will be adjusted for inflation beginning Jan. 1, 2018, and is currently set at $9.65.

103.    Plaintiffs and putative Minnesota Class members are directed to work by Defendants and, in fact, do work but are not compensated at least at the Minnesota minimum wage rate for all time worked. Pursuant to Under Minn. Stat. § 177.24, Subdivision 1, Plaintiffs and putative Minnesota Class members are entitled to be compensated at least at the applicable Minnesota-mandated minimum wage rate for all time worked.

104.    Minn. R. 5200.0120, Subpart 1, provides as follows:

> The minimum wage must be paid for all hours worked. Hours worked include training time, call time, cleaning time, waiting time, or any other time when the employee must be either on the premises of the employer or involved in the performance of duties in connection with his or her employment or must remain on the premises until work is prepared or available. Rest periods of less than 20 minutes may not be deducted from total hours worked.

105.    Minn. R. 5200.0120, Subpart 2, provides that "[a]n employee who is required to remain on the employer's premises or so close to the premises that the employee cannot use the time effectively for the employee's own purposes is working while on call."

106.    Pursuant to Minn. Stat. § 177.27, Subdivision 8, Plaintiffs and the putative Minnesota Class members are entitled to recover unpaid minimum wages under the MFLSA in a civil action. Minn. Stat. § 177.27, Subdivision 8 further states:

> An employer who pays an employee less than the wages … to which the employee is entitled … is liable to the employee for the full amount of the wages, gratuities, and overtime compensation, less any amount the employer is able to establish was actually paid to the employee and for an additional equal amount as liquidated damages. In addition, in an action under this subdivision the employee may seek damages and other appropriate relief provided by subdivision 7 and otherwise provided by law.

107.    Minn. Stat. § 177.27, Subdivision 10 provides that in any action brought pursuant to subdivision 8, the court shall order an employer who is found to have violated the MFLSA minimum wage requirements "to pay to the employee or employees reasonable costs, disbursements, witness fees, and attorney fees."

108.    Pursuant to Minn. Stat. § 549.03, when an employer of labor neglects or refuses to pay the agreed price, or the reasonable value if there is no agreement, for 30 days after it is due and payment is demanded, and the payment is recovered by action, the plaintiff shall be allowed to collect and all of the disbursements allowed by law and double the costs.

109.    Because of Defendants' policies and practices with regard to compensating Plaintiffs and putative Minnesota Class members, Defendants willfully fail to pay minimum wages as required by Minnesota law. Defendants dilute Plaintiffs' and the putative Minnesota Class Members' regular hourly rates of pay below the minimum wage by improperly deducting "expenses" from the workers' wages, as well as fabricating,

underreporting or otherwise artificially reducing the total hours reported worked by Plaintiffs and the putative Minnesota Class Members. Defendants further dilute Plaintiffs' and the putative Minnesota Class Members' regular hourly rates of pay below the minimum wage by requiring them to perform off-the-clock work—including but not limited to travel time and donning and doffing time— which adds to the actual hours worked by Plaintiffs and putative Minnesota Class members. Moreover, Defendants regularly require Plaintiffs and putative Class members to pay out-of-pocket for work expenses including personal protective equipment and transportation, lodging, and food when traveling to assigned work sites, and fail to fully reimburse Plaintiffs and putative Class members for these expenses, if at all. When the remuneration received by Plaintiffs and putative Class members is reduced by unreimbursed out-of-pocket expenses, and then divided by the actual hours worked, Plaintiffs and putative Class members are frequently compensated below the statutory minimum.

110.  Plaintiffs and putative Class members are and have been deprived of minimum wages in an amount to be proven at trial, and are entitled to a recovery of such amount, plus statutory and liquidated damages, interest thereon, attorneys' fees, and costs of suit pursuant to Minn. Stat. § 177.24, Minn. Stat. § 177.27, and the related Administrative Rules. Plaintiffs are entitled to recovery of double costs pursuant to Minn. Stat. § 549.03.

111.  Wherefore, Plaintiffs and the putative Minnesota Class Members request relief as hereinafter provided.

## COUNT II
## Minnesota Fair Labor Standards Act (Overtime Violation)

112.   Plaintiffs incorporate by reference the allegations set forth above.

113.   Defendants do not compensate Plaintiffs and putative Class members with the appropriate overtime rate for work performed in excess of forty-eight (48) hours per week.

114.   The MFLSA § 177.25 requires employers to pay overtime for all hours worked in excess of 48 per work week at a rate of one-and-one-half times the employee's regular rate of pay.

115.   Plaintiffs and Minnesota Class Members do not fall into any of the provided exceptions to MFLSA § 177.25

116.   Defendants' jointly enacted scheme of artificially reducing Plaintiffs and the Minnesota Class Members' reported working hours and failing to account for Plaintiffs and Minnesota Class Members' off-the-clock work had the effect of depriving Plaintiffs and Minnesota Class Members of overtime compensation for all hours worked beyond 48 in a work week.

117.   Minn. R. 5200.0120, Subp. 1, provides as follows:

> Hours worked include training time, call time, cleaning time, waiting time, or any other time when the employee must be either on the premises of the employer or involved in the performance of duties in connection with his or her employment or must remain on the premises until work is prepared or available. Rest periods of less than 20 minutes may not be deducted from total hours worked.

118.   Minn. R. 5200.0120, Subp. 2, provides that "[a]n employee who is required

to remain on the employer's premises or so close to the premises that the employee cannot use the time effectively for the employee's own purposes is working while on call."

119. Minn. R. 5200.0130 defines the regular rate of pay for overtime calculations as "the employee's remuneration in any workweek [divided] by the total hours worked." Minn. R. 2100.0140 excludes the following payments from the employee's remuneration for overtime calculations:

    A. Reimbursement for expenses incurred on the employer's behalf;

    B. Premium payments for overtime work or work on Saturdays, Sundays, holidays, or scheduled days off, if the premium rate is at least one-and-one-half times the normal rate;

    C. Bonuses given at the employer's discretion, as to both time and amount of payment;

    D. Cash or other valuables in the nature of gifts on special occasions;

    E. Payments for occasional periods when no work is performed including but not limited to vacation, holiday, or illness;

    F. Payments made pursuant to a bona fide profit-sharing plan or trust or bona fide thrift or savings plan, if amounts are determined without regard to production or efficiency; and

    G. Contributions irrevocably mane by an employer to a trustee or third person pursuant to a bona fide plan for providing old-age, retirement, life, accident, or health insurance or similar benefits for employees.

120. All other wages are subject to Minnesota's overtime requirements, including those set forth above.

121. Minn. R. 5200.0150 requires that overtime "be paid no later than the payday immediately following the regular payday for the pay period in which it was earned."

122.   Pursuant to Minn. Stat. § 177.27, Subd. 8, Plaintiffs and the putative Minnesota Class Members are entitled to recover unpaid overtime wages under the MFLSA in court. Minn. Stat. § 177.27, Subd. 8, further states:

> An employer who pays an employee less than the … overtime compensation to which the employee is entitled … is liable to the employee for the full amount of the wages, gratuities, and overtime compensation, less any amount the employer is able to establish was actually paid to the employee and for an additional equal amount as liquidated damages. In addition, in an action under this subdivision the employee may seek damages and other appropriate relief provided by subdivision 7 and otherwise provided by law.

123.   Minn. Stat. § 177.27, Subd. 10 provides that in any action brought pursuant to Subd. 8, the court shall order an employer who is found to have violated the MFLSA overtime requirements "to pay to the employee or employees reasonable costs, disbursements, witness fees, and attorney fees."

124.   Pursuant to Minn. Stat. § 549.03, when an employer of labor neglects or refuses to pay the agreed price, or the reasonable value if there is no agreement, for 30 days after it is due and payment is demanded, and the payment is recovered by action, the plaintiff shall be allowed to collect any and all of the disbursements allowed by law and double the costs.

125.   Because of Defendants' policies and practices with regard to compensating Plaintiffs and putative Minnesota Class members, Defendants have willfully failed to pay overtime wages as required by Minnesota law. Defendants dilute Plaintiffs' and the putative Minnesota Class Members' reported hours worked to avoid paying overtime by fabricating, underreporting or otherwise artificially reducing the total hours reported

worked by Plaintiffs and the putative Minnesota Class Members. Defendants further dilute Plaintiffs' and the putative Minnesota Class Members' reported hours worked by requiring them to perform off-the-clock work—including but not limited to travel time, donning and doffing time, and work during meal periods that have been deducted from the nominal hours worked—which adds to the actual hours worked by Plaintiffs and putative Minnesota Class members. The actual hours worked by Plaintiffs and the putative Minnesota Class Members exceed the threshold for overtime pay. Moreover, Defendants regularly require Plaintiffs and putative Minnesota Class Members to pay out-of-pocket for work expenses including transportation, lodging, and food when traveling to assigned work sites, and fail to fully reimburse Plaintiffs and putative Minnesota Class Members for these expenses, if at all. When the remuneration received by Plaintiffs and putative Minnesota Class Members is reduced by unreimbursed out-of-pocket expenses, and then divided by the actual hours worked, Defendants fail to compensate by Plaintiffs and putative Class members at the appropriate overtime rate for all of these hours.

126.   Plaintiffs and putative Minnesota Class Members have been and are deprived of overtime wages in an amount to be proven at trial, and are entitled to recovery of such amount, plus statutory and liquidated damages, interest thereon, attorneys' fees, and costs of suit pursuant to Minn. Stat. § 177.25, § 177.27, and the related Administrative Rules. Plaintiffs are entitled to recovery of double costs pursuant to Minn. Stat. § 549.03.

127.   Wherefore, Plaintiffs and the putative Minnesota Class Members request relief as hereinafter provided.

**COUNT III**
**Minnesota Fair Labor Standards Act (Expense Reimbursement)**

128.    Plaintiffs incorporate by reference the allegations set forth above.

129.    MFLSA § 177.24, Subd. 4 prohibits employers from deducting, directly or indirectly, for items including travel expenses and consumable supplies, which when subtracted from wages would reduce the wages below the minimum wage.

130.    Defendants failed, and continue to fail, to reimburse Plaintiffs and Minnesota Class Members for their reasonable business expenses, including expenses for food, lodging, and travel while working on work sites. Plaintiffs and Minnesota Class Members' travel expenses are not incurred in traveling to and from their residences to their place of employment.

131.    Under MFLSA § 177.24, Subd. 5, an employer must reimburse the full amount of business expenses. Plaintiffs and Minnesota Class Members are entitled to this reimbursement of reasonable business expenses.

132.    Wherefore, Plaintiffs and the putative Minnesota Class Members request relief as hereinafter provided.

**COUNT IV**
**Minnesota Fair Labor Standards Act (Payroll Card Account Violation)**

133.    Plaintiffs incorporate by reference the allegations set forth above.

134.    MFLSA § 177.255, Subd. 5 & 6 requires written disclosure and written consent for an employee to be allowed to be paid wages by electronic fund transfer to a payroll card account. The statute further requires that the employer shall provide free transaction history of the payroll card account each month that includes all deposits,

withdrawals, deductions, or charges by any entity from or to the account. The statute further prohibits the account from being linked to any form of credit, including loans against future pay or cash advance on future pay. The statute further prohibits employer charges on initiating, participating, loading, or other fees to receive the wages payable to the employee on the payroll card account. The statute further prohibits fees imposed by the employer that were not disclosed to the employee, including inactivity or dormancy fees.

135.    Defendants jointly violated, and continue to violate, this statute by failing to provide the transaction history showing all deductions to the account. Namely, Defendants fail to identify the hours they are deducting from Plaintiffs and Minnesota Class Members' time records and the accompanying deduction of wages earned therein. Defendants further violate this statute by requiring Plaintiffs and Minnesota Class Members to pay a fee to access their wage statements through their iPay accounts.

136.    MFLSA § 177.255, Subd. 14 provides that violating the statute shall be considered a misdemeanor as provided in Minn. Stat. § 177.32, Subd. 1.

137.    Defendants are liable to Plaintiffs and putative Minnesota Class Members for civil penalties, damages, compensatory damages, and other relief including but not limited to injunctive relief, and all costs and attorneys' fees incurred as a result of this payroll card account violation.

138.    Wherefore, Plaintiffs and the putative Minnesota Class Members request relief as hereinafter provided.

## COUNT V
## Minnesota Fair Labor Standards Act (Failure to Keep Accurate Records)

139.    Plaintiffs incorporate by reference the allegations set forth above.

140.    Defendants do not and did not maintain accurate payroll records for Plaintiffs and putative Minnesota Class members as required by Minnesota law.

141.    Minn. Stat. § 177.30 requires every employer subject to Minn. Stat. §§ 177.21 -177-44 to make and keep a record of the name, address, and occupation of each employer, their rate of pay and the amount paid each pay period to each employee, and the hours worked each day and each workweek by the employee. The statute requires employers to keep these records for three years.

142.    Defendants jointly violate Minn. Stat. § 177.30 by failing to accurately make and keep a record of the hours actually worked by Plaintiffs and the putative Minnesota Class Members. Instead, Defendants record inaccurate and artificially reduced hours worked by Plaintiffs and putative Minnesota Class Members. Accordingly, Plaintiffs and putative Minnesota Class Members are entitled to civil penalties for each violation as well as injunctive relief.

143.    Pursuant to Minn. Stat. § 177.30(b), the Commissioner of the Minnesota Department of Labor and Industry (the "Commissioner") may fine an employer up to $1,000 for each failure to maintain payroll records as required. In determining the amount of a civil penalty, the size of the employer's business and the gravity of the violation shall be considered.

144.    Pursuant to Minn. Stat. § 177.27, Subdivision 7, the Commissioner may order employers who violate Minn. Stat. § 177.30 and other Minnesota wage and hour laws to pay civil penalties, attorneys' fees, and other appropriate relief. Additionally, any employer who is found by the Commissioner to have repeatedly or willfully violated the provisions in Minn. Stat. §§ 177.21-177.44, including Minn. Stat. § 177.30, shall be subject to a civil penalty of up to $1,000 for each violation for each employee.

145.    Pursuant to Minn. Stat. § 177.27, Subdivision 8, employees may seek damages and other appropriate relief that may alternatively be sought by the Commissioner under Minn. Stat. § 177.27, Subdivision 7 and as otherwise provided by law.

146.    Minn. Stat. § 177.27, Subdivision 10 provides that in any action brought pursuant to Minn. Stat. § 177.27, Subdivision 8, the court shall order an employer who is found to be in violation "to pay to the employee or employees reasonable costs, disbursements, witness fees, and attorney fees."

147.    Defendants do not maintain accurate payroll records for Plaintiffs and putative Minnesota Class members in accordance with Minn. Stat. § 177.30(a). The payroll records for Plaintiffs and putative Minnesota Class members do not accurately reflect the actual hours worked or the actual rate of pay.

148.    Defendants are liable to Plaintiffs and the putative Minnesota Class Members for the penalties described above in an amount according to proof at time of trial. Furthermore, Plaintiffs are entitled to an award of attorneys' fees and costs as set forth below, pursuant to Minn. Stat. § 177.27, Subdivision 10.

149.    Wherefore, Plaintiffs and the putative Minnesota Class Members request

relief as hereinafter provided.

**THIRD CAUSE OF ACTION**
**Failure to Pay for All Hours Worked Under Minnesota Law**

150.    Plaintiffs incorporate by reference the allegations set forth above.

151.    Defendants willfully engaged and continue to engage in a policy and practice of not compensating Plaintiffs and putative Class members for all hours worked or spent in their control

152.    Defendants regularly schedule Plaintiffs and putative Minnesota Class members to work shifts exceeding 12 hours. However, Defendants falsify and fabricate time records indicating Plaintiffs and putative Minnesota Class members work fewer than the actual number of hours worked per shift. Further, Defendants intentionally and willfully require Plaintiffs and putative Minnesota Class members to complete additional work off-the-clock (e.g., drive time from Chicago to Minnesota, donning and doffing, and meetings held after end of shift). Defendants do not compensate Plaintiffs and Class members for this off-the-clock time. As a result, Defendants fail to pay Plaintiffs and putative Class members for all hours worked and failed to accurately track their actual hours worked.

153.    Minn. R. 5200.0120, Subpart 1, provides as follows:

> Hours worked include training time, call time, cleaning time, waiting time, or any other time when the employee must be either on the premises of the employer or involved in the performance of duties in connection with his or her employment or must remain on the premises until work is prepared or available. Rest periods of less than 20 minutes may not be deducted from total hours worked.

154.    Minn. R. 5200.0120, Subpart 2, provides that "[a]n employee who is required

-36-

to remain on the employer's premises or so close to the premises that the employee cannot use the time effectively for the employee's own purposes is working while on call."

155.   Defendants require Plaintiffs and the putative Minnesota Class members to work off-the-clock without compensation. Defendants also fabricate, falsify, and artificially reduce the recorded work hours by Plaintiffs and the Class members. In other words, Plaintiffs and the Class members are forced to perform work for the benefit of Defendants without compensation for all hours worked.

156.   Minn. Stat. § 181.101(a) provides as follows:

> [E]very employer must pay all wages earned by an employee at least once every 31 days on a regular payday designated in advance by the employer regardless of whether the employee requests payment at longer intervals. Unless paid earlier, the wages earned during the first half of the 31-day period become due on the first regular payday following the first day of work.

157.   The MPWA, Minn. Stat. § 181.14, Subdivision 1, provides as follows:

> Wages are earned and unpaid if the employee was not paid for all time worked at the employee's regular rate of pay or at the rate required by law, including any applicable statute, regulation, rule, ordinance, government resolution or policy, contract, or other legal authority, whichever rate of pay is greater.

158.   Pursuant to Minn. Stat. § 181.171, Subdivisions 1 and 3, Plaintiffs and the putative Minnesota Class members are entitled to recover unpaid wages, civil penalties, compensatory damages, injunctive relief, and attorneys' fees and costs in a civil action for violations of Minn. Stat. §§ 181.101 and 181.14.

159.   Pursuant to Minn. Stat. § 549.03, when an employer of labor neglects or refuses to pay the agreed price, or the reasonable value if there is no agreement, for 30 days

after it is due and payment is demanded, and the payment is recovered by action, the plaintiff shall be allowed to collect and all of the disbursements allowed by law and double the costs.

160.    In violation of Minnesota law, Defendants knowingly and willfully refuse to perform their obligations to provide Plaintiffs and the putative Class members with compensation for all time worked. Defendants regularly falsify and manipulate time records, fail to track the time these employees actually worked, and fail to compensate these employees for all hours worked. Therefore, Defendants committed the acts alleged herein knowingly and willfully, and in conscious disregard of the Plaintiffs and the putative Minnesota Class members' rights.  Plaintiffs and the putative Minnesota Classes are thus entitled to recover nominal, actual, statutory, and compensatory damages, plus interest, attorneys' fees, expenses, and costs of suit, pursuant Minn. Stat. § 181.171, Subdivisions 1 and 3. Plaintiffs are entitled to recovery of double costs pursuant to Minn. Stat. § 549.03.

161.    As a proximate result of the aforementioned violations, Plaintiffs and the putative Minnesota Class have been damaged in an amount according to proof at time of trial.

162.    Wherefore, Plaintiffs and the putative Minnesota Class request relief as hereinafter provided.

**FOURTH CAUSE OF ACTION**
**COUNT I**
**Minnesota Payment of Wages Act (Failure to Pay Wages Promptly)**

163.    Plaintiffs incorporate by reference the allegations set forth above.

164.    Plaintiffs and the putative Minnesota Class Members were and are

nonexempt employees of Defendants within the meaning of Minn. Stat. § 177.22 and are

entitled to the protections of all Minnesota wage statutes, including Minn. Stat. § 181.

165.    The MPWA, Minn. Stat. §§ 181.13 and 181.14, requires prompt payment of

all wages to employees for all hours worked at the end of employment.

166.    Minn. Stat. § 181.13, Subdivision 1, provides as follows:

> When any employer employing labor within this state
> discharges an employee, the wages or commissions actually
> earned and unpaid at the time of the discharge are immediately
> due and payable upon demand of the employee. Wages are
> actually earned and unpaid if the employee was not paid for all
> time worked at the employee's regular rate of pay or at the rate
> required by law, including any applicable statute, regulation,
> rule, ordinance, government resolution or policy, contract, or
> other legal authority, whichever rate of pay is greater.

167.    Minn. Stat. § 181.13, Subdivision 1, further provides the following regarding

discharged employees:

> If the employee's earned wages and commissions are not paid
> within 24 hours after demand, whether the employment was by
> the day, hour, week, month, or piece or by commissions, the
> employer is in default. In addition to recovering the wages and
> commissions actually earned and unpaid, the discharged
> employee may charge and collect a penalty equal to the amount
> of the employee's average daily earnings at the employee's
> regular rate of pay or the rate required by law, whichever rate
> is greater, for each day up to 15 days, that the employer is in
> default, until full payment or other settlement, satisfactory to
> the discharged employee, is made. . . . An employee's demand
> for payment under this section must be in writing but need not
> state the precise amount of unpaid wages or commissions. An
> employee may directly seek and recover payment from an
> employer under this section even if the employee is not a party
> to a contract that requires the employer to pay the employee at
> the rate of pay demanded by the employee, so long as the
> contract or any applicable statute, regulation, rule, ordinance,

government resolution or policy, or other legal authority requires payment to the employee at the particular rate of pay. The employee shall be able to directly seek payment at the highest rate of pay provided in the contract or applicable law, and any other related remedies as provided in this section.

168.    Minn. Stat. § 181.14, Subdivision 1, provides as follows:

When any [] employee quits or resigns employment, the wages or commissions earned and unpaid at the time the employee quits or resigns shall be paid in full not later than the first regularly scheduled payday following the employee's final day of employment, unless an employee is subject to a collective bargaining agreement with a different provision. Wages are earned and unpaid if the employee was not paid for all time worked at the employee's regular rate of pay or at the rate required by law, including any applicable statute, regulation, rule, ordinance, government resolution or policy, contract, or other legal authority, whichever rate of pay is greater. If the first regularly scheduled payday is less than five calendar days following the employee's final day of employment, full payment may be delayed until the second regularly scheduled payday but shall not exceed a total of 20 calendar days following the employee's final day of employment.

169.    Minn. Stat. § 181.14, Subdivision 2, provides the following regarding employees who quit or resign:

Wages or commissions not paid within the required time period shall become immediately payable upon the demand of the employee. If the employee's earned wages or commissions are not paid within 24 hours after the demand, the employer shall be liable to the employee for a penalty equal to the amount of the employee's average daily earnings at the employee's regular rate of pay or the rate required by law, whichever rate is greater, for every day, not exceeding 15 days in all, until such payment or other settlement satisfactory to the employee is made. The employer shall also be liable to the employee for the amount of wages and commissions that are earned and unpaid. An employee's demand for payment under this section must be in writing but need not state the precise amount of unpaid wages or commissions. An employee may directly seek and

recover payment from an employer under this section even if the employee is not a party to a contract that requires the employer to pay the employee at the rate of pay demanded by the employee, so long as the contract or any applicable statute, regulation, rule, ordinance, government resolution or policy, or other legal authority requires payment to the employee at the particular rate of pay. The employee shall be able to directly seek payment at the highest rate of pay provided in the contract or applicable law, and any other remedies related thereto as provided in this section.

170.    Pursuant to Minn. Stat. § 181.171, Subdivisions 1 and 3, Plaintiffs and the putative Minnesota Class members are entitled to recover unpaid wages, civil penalties, compensatory damages, and attorneys' fees and costs in a civil action for violations of Minn. Stat. §§ 181.13 and 181.14.

171.    By the actions alleged above, Defendants violated and continue to violate the provisions of Minn. Stat. §§ 181.13 and 181.14 by failing to pay any wage whatsoever to Plaintiffs and putative Minnesota Class members when they work off-the-clock, are deprived of correct overtime compensation, or are subjected to improper deductions of wages. Moreover, Defendants regularly require Plaintiffs and putative Class members to pay out-of-pocket for work expenses, as described above, and fail to fully reimburse Plaintiffs and putative Class members for those expenses, if at all. These amounts remain due upon the separation of employment. Therefore, Defendants committed, and continue to commit, the acts alleged herein knowingly and willfully, and in conscious disregard of Plaintiffs and putative Minnesota Class members' rights. Plaintiffs and putative Minnesota Class members are thus entitled to recover nominal, actual, statutory, and compensatory damages, plus interest, attorneys' fees, expenses, and costs of suit, pursuant to Minn. Stat.

§ 181.171, Subdivisions 1 and 3.

172.    As a proximate result of the aforementioned violations, Plaintiffs and putative Minnesota Class members have been damaged in an amount according to proof at time of trial.

173.    Wherefore, Plaintiffs and the putative Minnesota Class members request relief as hereinafter provided.

## COUNT II
## Minnesota Payment of Wages Act (Wage Statement Violation)

174.    Plaintiffs incorporate by reference the allegations set forth above.

175.    MWPA § 181.032 requires employers, at the end of each pay period, to provide each employee an earnings statement covering that pay period. The statute requires that the wage statement must include: the employee's name, the hourly rate of pay, the total number of hours worked by the employee, the total amount of gross pay, the list of deductions made from the employee's pay, the net amount of pay after all deductions are made, the date on which the pay period ends, and the legal name of the employer and operating name of the employer if different from the legal name. *See* Minn. Stat. § 181.032(b).

176.    Defendants violated and continue to violate MPWA § 181.032 because Defendants fail to provide freely-accessible wage statements to Plaintiffs and the putative Minnesota Class members in a timely fashion. When wage statements are provided, if at all, Defendants fail to state the total number of hours actually worked by Plaintiffs and the putative Minnesota Class members on their earning statements.

177.    Defendants' violations of the above-named statutes are willful and not the result of mistake or inadvertence.

178.    As a direct and proximate result of Defendants' actions, Plaintiffs and putative Minnesota Class Members have been and continue to be damaged, suffering economic harm, lost earnings and benefits, and other damages.

179.    Defendants are liable to Plaintiffs and putative Minnesota Class Members for civil penalties, damages, compensatory damages, and other relief including but not limited to injunctive relief, and all costs and attorneys' fees incurred in this action.

180.    Wherefore, Plaintiffs and the putative Class members request relief as hereinafter provided.

## VII.    <u>PRAYER FOR RELIEF</u>

WHEREFORE, Plaintiffs pray that this Court enter the following relief:

i.Declaration that Defendants' pay practices violate the FLSA;

ii.Declaration that Defendants' pay practices violate Minnesota wage laws;

iii.An order allowing Plaintiffs to notify collective members of their right to opt-in to this action to pursue a claim under the FLSA, pursuant to 29 U.S.C. § 216(b);

iv.An order allowing Plaintiffs  to pursue his Minnesota claims as a class action pursuant to Federal Rule of Civil Procedure 23;

v.An order awarding Plaintiffs and the Collective Members back pay equal to the amount of all unpaid wages, plus an equal amount in liquidated damages for willful violations of the FLSA;

vi. An order awarding Plaintiffs and the Collective Members litigation costs, expenses, and attorneys' fees to the fullest extent permitted under the FLSA;

vii. An order awarding Plaintiffs and the putative Minnesota Class Members back pay equal to the amount of all unpaid wages, plus an equal amount in liquidated damages for violations of the MFLSA.

viii. An order requiring Defendants to reimburse Plaintiffs and the putative Minnesota Class Members for all of their business-related expenses, including expenses for food, travel, and lodging;

ix. An order awarding civil penalties for Defendants' failure to timely pay all wages due under Minnesota law;

x. An order awarding civil penalties, compensatory damages, and injunctive relief for Defendants' violation of the Minnesota payroll card account statute;

xi. An order awarding penalties and damages for Defendants' improper wage deductions under Minnesota law;

xii. An order awarding litigation costs, expenses, and attorneys' fees to the fullest extent permitted under Minnesota law; and

xiii. Any other relief to which Plaintiffs and the Class Members may be entitled.

Dated: July 23, 2019                    Respectfully submitted,

*/s/E. Michelle Drake*
E. Michelle Drake, Bar No. 0387366
BERGER MONTAGUE PC
43 SE Main Street, Suite 505
Minneapolis, Minnesota 55414
Tel: (612) 594-5933

-44-

Fax: (612) 584-4470
emdrake@bm.net

*Local Counsel for Plaintiffs*

Carolyn H. Cottrell (to be admitted *pro hac vice*)
California Bar No. 166977
Ori Edelstein (to be admitted *pro hac vice*)
California Bar No. 268145
SCHNEIDER WALLACE COTTRELL
KONECKY WOTKYNS LLP
2000 Powell Street, Suite 1400
Emeryville, California 94608
Tel:  (415) 421-7100
Fax:  (415) 421-7105
ccottrell@schneiderwallace.com
oedelstein@schneiderwallace.com

William M. Hogg (to be admitted *pro hac vice*)
Texas Bar No. 24087733
SCHNEIDER WALLACE COTTRELL
KONECKY WOTKYNS LLP
3700 Buffalo Speedway, Suite 300
Houston, Texas 77098
Tel: (713) 338-2560
Fax: (415) 421-7105
whogg@schneiderwallace.com

*Counsel for Plaintiffs*